# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**LAURA PENN**,

        Plaintiff,

v.

**YES MANAGEMENT**, **LLC**

        Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff Laura Penn, by and through her attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for retaliation for opposing race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL §

37.2101, *et seq*.

2. Plaintiff, Laura Penn, is an individual who is a citizen of Jackson, Michigan in Jackson County.

3. Defendant, Yes Management, LLC, is a foreign limited liability company with a resident agent in Plymouth, Michigan.

4. Plaintiff is a former employee of Defendant as defined by Title VII and ELCRA.

5. Defendant maintains corporate offices in Farmington Hills, Michigan in Oakland County and the Eastern District of Michigan.

6. On information and belief, a substantial part of the events or omissions giving rise to the claims in this matter occurred at Defendant's Farmington Hills corporate offices.

7. On information and belief, Defendant maintained and administered the employment records relevant to this matter at its Farmington Hills corporate offices.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

9. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or

complex issues. Therefore, exercise of jurisdiction is proper.

10. Venue is proper in this Court because Defendant's resident agent is within the Eastern District of Michigan, Defendant has corporate offices within the Eastern District of Michigan, Defendant maintained Plaintiff's employment records within the Eastern District of Michigan, and actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

11. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation for opposing race discrimination.

12. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

13. Plaintiff received her notice of right to sue from the EEOC prior to bringing the instant action and has filed suit within 90 days of its receipt.

## STATEMENT OF FACTS

14. Plaintiff began her employment with Defendant as a Sales and Leasing Agent on or about January 28, 2019. Shortly into her employment, Plaintiff began working at Defendant's Dutch Hills property in East Lansing, Michigan.

15. In her position, Plaintiff was responsible for selling and renting homes to potential residents. She also counseled approximately ten (10) employees.

16. At all times relevant hereto, Plaintiff performed her job diligently and competently and was well-qualified for the position she held.

17. Officially, Plaintiff's supervisor was Regional Manager Mark Adams, but she reported directly to the Community Manager of the Dutch Hills property.

18. Mr. Adams worked out of Defendant's corporate offices in Farmington Hills, Michigan.

19. Defendant's human resources representatives relevant to this matter also worked out of Defendant's corporate offices in Farmington Hills, Michigan.

20. In or about March 2023, Defendant hired a new Community Manager of Dutch Hills, Tammy Kretzinger.

21. Soon after Ms. Kretzinger started at Defendant, it became clear that she was racist.

22. She would frequently make racist and racially charged comments in the workplace.

23. Ms. Kretzinger often discussed race in the office, referenced race and nationality in every story she told, and on multiple occasions tried to convince Plaintiff that she was not racist. Ms. Kretzinger made racist comments to an African American office assistant, referring to her as "you people" on multiple occasions. The office assistant made a complaint to Defendant's corporate human resources department ("HR"), which HR initially ignored.

4

24. Ms. Kretzinger was not only racist to other Yes employees, but to Dutch Hills residents as well.

25. Non-white residents complained that Ms. Kretzinger harassed them and enforced rules more harshly against them than against white residents.

26. Most egregiously, there was an incident in which multiple residents witnessed Ms. Kretzinger calling children of color "niggers" and "border-hoppers" at a community playground.

27. Plaintiff reported the incident to Mark Adams and District Manager Jenny Ayers, who dismissed these severe and credible claims of racism as "hearsay".

28. Plaintiff then reported the incident to HR, as did the aforementioned office assistant and two maintenance workers.

29. On or about August 16, 2023, Plaintiff sent a letter to HR explaining her concerns about the situation with Ms. Kretzinger.

30. In the letter, Plaintiff detailed and opposed Ms. Kretzinger's racism towards the office assistant, harassment of residents of color, discriminatory enforcement of policies, and potential FHA violations.

31. This letter finally elicited a response from HR, who conducted an investigation in which HR and Mr. Adams interviewed the office assistant, the maintenance mechanics, and Plaintiff on or about September 21st.

5

32. In her interview, Plaintiff provided information regarding all of the above-outlined incidents involving the racist conduct she had observed and heard about from Ms. Kretzinger and stated her opposition to them.

33. After Plaintiff noticed that Ms. Kretzinger was still working, and it appeared nothing had been done, on or about September 26th, Plaintiff asked Ms. Ayers for an update on the investigation. Ms. Ayers told Plaintiff that Defendant would not be taking any formal action against Ms. Kretzinger, but that if she was racist again, Plaintiff should just confront Ms. Kretzinger.

34. After the investigation, Ms. Kretzinger became hostile toward Plaintiff, convinced that it was Plaintiff who had reported her to HR.

35. This retaliatory behavior escalated on October 5, 2023, when Ms. Kretzinger verbally attacked Plaintiff.

36. That day, Ms. Kretzinger was attempting to convince Plaintiff to confront residents about ownership of prohibited pets.

37. Plaintiff, however, noted that these were African American residents Ms. Kretzinger had been feuding with already due to racially disparate treatment and expressed concern that the dogs in question could be service animals. Therefore, punishing residents for having them could be a violation of the Fair Housing Act. Furthermore, Ms. Kretzinger had allowed Caucasian residents to keep similar pets.

38. Upon Plaintiff's push-back, Ms. Kretzinger became irate, claiming it was Plaintiff's fault people owned the prohibited pets in the first place because she had not done her due diligence in vetting potential residents.

39. Plaintiff remained as calm as possible and decided to leave the situation in an attempt to deescalate.

40. Plaintiff, who lived in the Dutch Hills community at the time, had a work-from-home set-up from when she previously worked from home while recovering from an injury, so she notified Ms. Kretzinger and Mr. Adams that she would work from home the rest of the day.

41. When Plaintiff spoke with Mr. Adams that day, she informed him of her entire situation with Ms. Kretzinger, and Mr. Adams voiced no objection to Plaintiff working from home.

42. However, when Plaintiff returned to work the following morning, Defendant terminated her employment, ostensibly for insubordination for the previous day's incident.

43. In reality, Defendant terminated Plaintiff because of her multiple complaints regarding Ms. Kretzinger's race discrimination against workers and residents.

44. Ms. Ayers confirmed this after Plaintiff's termination, expressly telling Plaintiff, in reference to everyone who made a complaint against Ms. Kretzinger,

"Mark wanted to fire all four of you. He felt as if you were tainted." However, Ms. Ayers had convinced Mr. Adams to only terminate Plaintiff.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

45.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

46.     At all times relevant hereto, Plaintiff was an employee, and Defendant was her employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b), (f).

47.     At all times relevant hereto, Defendant engaged in interstate commerce and employed more than 15 employees and is thus subject to the requirements of Title VII.

48.     Plaintiff engaged in protected activity under Title VII, 42 U.S.C. § 2000e-3(a) by opposing discrimination against workers and residents on the basis of their race, including by reporting such discrimination to her managers and human resources.

49.     Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

50.     Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

51. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

52. Defendant's actions in violation of Title VII were willful.

53. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

54. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

55. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

56. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

57. By the conduct described above, Defendant intentionally retaliated against Plaintiff because of her opposition to race discrimination which violated her right to creation, performance, enjoyment, and all benefits and privileges, of a

contractual employment relationship with Defendant, regardless of race, in violation of 42 U.S.C. §1981. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

58. Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by opposing discrimination against workers and residents on the basis of their race, including by reporting such discrimination to her managers and human resources.

59. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

60. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

61. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

62. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

63. As a direct and proximate result of Defendant's violation of § 1981, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

64. As a further direct and proximate result of Defendant's violation of § 1981, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## RETALIATION IN VIOLATION OF FHA

65. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

66. At all times relevant hereto, Defendant rented and/or sold dwellings, subjecting Defendant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*.

67. Plaintiff engaged in protected activity under FHA by aiding residents in opposing discrimination against them on the basis of their race, including by reporting such discrimination to her managers and human resources.

68. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

69. Defendant's actions interfered with Plaintiff's employment contract in violation of the FHA, 42 U.S.C. § 3617. *See Linkletter v. W. & S. Fin. Grp.*, Inc., 851 F.3d 632, 638 (6th Cir. 2017).

11

70. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

71. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

72. Defendant's actions in violation of the FHA were willful.

73. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

74. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

75. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## RETALIATION IN VIOLATION OF ELCRA

76. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

77. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2201.

78. Plaintiff engaged in protected activity under the ELCRA, MCL § 37.2701, by opposing discrimination against workers and residents on the basis of their race, including by reporting such discrimination to her managers and human resources.

79. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, terminating Plaintiff's employment.

80. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

81. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

82. Defendant's actions in violation of ELCRA were willful.

83. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

84. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of

13

earnings and benefits, and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, **LAURA PENN**, requests that this Honorable Court grant the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of Title VII, 42 U.S.C. § 1981, the FHA, and ELCRA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount she is found to be entitled;

c. Exemplary damages in whatever amount she is found to be entitled;

d. Punitive damages in whatever amount she is found to be entitled;

e. A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

f. An order of this Court reinstating Plaintiff to the position she would have if there had been no wrongdoing by Defendant;

g. An injunction of this Court prohibiting any further acts of discrimination by Defendant;

h. An award of interest, costs and reasonable attorney fees; and

i. Whatever other equitable relief this Court finds appropriate.

                                                Respectfully Submitted,
                                                CROSON, TAUB, & MICHAELS, PLLC

                                                /s/ Adam M. Taub_____
                                                Adam M. Taub (P78334)
                                                Attorney for Plaintiff
                                                455 E. Eisenhower Pkwy, Ste. 75
                                                Ann Arbor, MI 48108
                                                (734) 519-0872
Dated: November 13, 2024           ataub@ctmlawyers.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LAURA PENN**,                                    Case No.
                                                   Hon.
        Plaintiff,

v.

**YES MANAGEMENT**, **LLC**

        Defendant.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## **DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, **LAURA PENN**, by and through her attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, and hereby demands a trial by jury, for all issues so triable.

        Respectfully Submitted,
        CROSON, TAUB, & MICHAELS, PLLC


        /s/ Adam M. Taub_____
        Adam M. Taub (P78334)
        Attorney for Plaintiff
        455 E. Eisenhower Pkwy, Ste. 75
        Ann Arbor, MI 48108
        (734) 519-0872
Dated: November 13, 2024    ataub@ctmlawyers.com